UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

JUAN DIONICIO DELGADO,

                    Petitioner,

v.                                          Case No. 3:05-cv-1215-J-33HTS

JAMES R. MCDONOUGH,
etc.; et al.,

                    Respondents.

_____

### ORDER

#### I. Status

     Petitioner Delgado, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (Doc. #1) (hereinafter Petition) pursuant to 28 U.S.C. § 2254 on November 28, 2005.  Petitioner challenges a 2000 state court (Duval County, Florida) conviction for three counts of sexual battery by a person in a position of familial or custodial authority on a person older than twelve, but less than eighteen years of age and one count of promoting a sexual

performance by a child on the following grounds: (1) ineffective assistance of trial counsel for failure to produce, investigate, depose and cross-examine potential exculpatory witness Nam Chan Huynh; (2) ineffective assistance of trial counsel for failure to produce available witness Phuoc Vo for trial and for failure to produce the original documents that stated the real age of the alleged victim; (3) ineffective assistance of trial counsel for failure to call the State's DNA expert who would have created a reasonable doubt as to Petitioner's guilt; and, (4) Petitioner was denied a fair trial and due process of law as a result of the cumulative errors and omissions by counsel.

Respondents filed an Answer to Petition for Writ of Habeas Corpus (Doc. #8) (hereinafter Response).  In support of their Response, they submitted exhibits.[1]  Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment.  See Court's Order to Show Cause and Notice to Petitioner (Doc. #5).  Petitioner has responded.  This case is now ripe for review.

## II. Procedural History

Petitioner was charged with and convicted of three counts of sexual battery by a person in a position of familial or custodial authority on a person older than twelve, but less than eighteen

---

[1] Respondents' exhibits will be hereinafter referred to as "Ex."

2

years of age and one count of promoting a sexual performance by a child. Ex. A at 34-35, 78-81. On November 2, 2000, Petitioner was sentenced to two concurrent terms of forty years of incarceration on counts one and two and two concurrent terms of fifteen years of incarceration on counts three and seven. Id. at 85-98. In addition, Petitioner was placed on fifteen years of sex offender probation, to run consecutively to the prison sentences. Id.

Petitioner, through counsel, raised the following claims on direct appeal: (1) the trial court erred in limiting Petitioner's cross-examination of the victim, a critical witness in the case, with regard to her credibility; (2) the trial court erred in not granting his motions for mistrial when the State Attorney, in opening statement, expressed to the jurors her personal belief that when the videotape was shown it would be "the longest hour you have ever had to live through" and when, during closing argument, the State ridiculed the defense theory; in addition, the prosecutor improperly argued to shift the burden of proof to the defense and made numerous personal comments on the evidence; the preserved objectionable comments, together with the unpreserved improper comments, deprived Petitioner of a fair trial; (3) the trial court erred in admitting the I.N.S. file, which contained hearsay within hearsay; and, (4) the trial court erred in denying the motion to suppress the videotapes taken from the trunk of Petitioner's automobile because Phuoc Vo was indirectly encouraged by police to

search the automobile and she had no personal reason to conduct the search other than to obtain evidence for the State; alternatively, the police significantly exceeded the scope of the private search by viewing the tapes without a warrant.  Ex. D.  On March 4, 2002, the appellate court per curiam affirmed without issuing a written opinion.  <u>Delgado v. State</u>, 810 So.2d 922 (Fla. 1st DCA 2002); Ex. G.  The mandate was issued on March 20, 2002.  Ex. H.

On November 18, 2002, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following claims: (1) trial counsel was ineffective for failure to investigate and interview exculpatory witness Nam Chan Huynh; (2) trial counsel was ineffective for failure to call available witness Phuoc Thi Vo; (3) trial counsel was ineffective for failure to proffer the testimony of the DNA expert Charles Brian Coughlin, which would have created a reasonable doubt as to Petitioner's guilt; and, (4) Petitioner was denied a fair trial and due process of law as a result of the cumulative errors and omissions by counsel.  Ex. I at 1-77.  The State responded.  <u>Id</u>. at 78-80.  On March 11, 2004, an evidentiary hearing was conducted on Petitioner's claims, at which both Petitioner and his former attorney testified and at which Petitioner was represented by appointed private counsel.  <u>Id</u>. at 125-91, Transcript of the Evidentiary Hearing (hereinafter EH Tr.).  On April 2, 2004, the

4

trial court denied the motion for post conviction relief.  Ex. J at 1-6.

Petitioner Delgado appealed, and the parties filed briefs. Ex. L; Ex. M; Ex. N.  On June 10, 2005, the appellate court per curiam affirmed without issuing a written opinion.  Delgado v. State, 903 So.2d 938 (Fla. 1st DCA 2005); Ex. O.  The mandate was issued on July 6, 2005.  Ex. P.  On July 12, 2005, Petitioner filed a motion for recall of mandate, which was denied on July 28, 2005. Ex. Q.

On August 22, 2005, Petitioner filed a Notice to Invoke the Discretionary Review of the Florida Supreme Court.  Ex. R.  On August 30, 2005, the Supreme Court of Florida dismissed the petition for review.  Delgado v. State, 911 So.2d 792 (Fla. 2005); Ex. S.

As noted by the Respondents, the Petition for Writ of Habeas Corpus, filed in this Court on November 28, 2005, is timely filed within the one-year period of limitation.  See Response at 4-5; 28 U.S.C. § 2244(d).

### III. Evidentiary Hearing

This Court has carefully reviewed the record and, for the reasons set forth more fully below, concludes Petitioner is not entitled to an evidentiary hearing.  A habeas corpus petitioner is entitled to an evidentiary hearing in federal court if he alleges facts which, if proven, would entitle him to habeas corpus relief.

Smith v. Singletary, 170 F.3d 1051, 1053-54 (11th Cir. 1999) (citation omitted); Cave v. Singletary, 971 F.2d 1513, 1516 (11th Cir. 1992) (citing Townsend v. Sain, 372 U.S. 293 (1963)). Here, the pertinent facts of the case are fully developed in the record before the Court. Smith, 170 F.3d at 1054 (stating that a district court does not need to conduct an evidentiary hearing "if it can be conclusively determined from the record that the petitioner was not denied effective assistance of counsel"). No evidentiary proceedings are required in this Court. High v. Head, 209 F.3d 1257, 1263 (11th Cir. 2000) (citing McCleskey v. Zant, 499 U.S. 467, 494 (1991)), cert. denied, 532 U.S. 909 (2001). The Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004). Therefore, for the reasons set forth above, an evidentiary hearing will not be conducted by this Court.

### IV. Standard of Review

On April 24, 1996, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA). Since this action was filed after the effective date of AEDPA, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA. Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215

n.10 (11th Cir. 2001), <u>cert</u>. <u>denied</u>, 535 U.S. 1104 (2002); <u>Wilcox</u>

<u>v. Florida Dep't of Corr.</u>, 158 F.3d 1209, 1210 (11th Cir. 1998),

<u>cert</u>. <u>denied</u>, 531 U.S. 840 (2000).

The Eleventh Circuit has described the standard of review

under AEDPA:

> Title 28 U.S.C. § 2254 governs the authority of the federal courts to consider applications for writs of habeas corpus submitted by state prisoners. Section 2254 was amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), which was effective as of April 24, 1996. AEDPA applies to all petitions filed after its effective date. . . .
>
> AEPDA "places a new constraint on a federal habeas court's power to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court" by establishing a deferential standard for reviewing state court judgments in these cases. <u>Williams v. Taylor</u>, 529 U.S. 362, 412, 120 S.Ct. 1495, 1523, 146 L.Ed.2d 389 (2000). Subsection (d) of § 2254 provides:
>
> > (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> >
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

7

>            (2) resulted in a decision that was
>      based     on     an     unreasonable
>      determination of the facts in light
>      of  the  evidence  presented  in  the
>      State court proceeding.
>
>      28 U.S.C. § 2254(d)(1)-(2).
>
>            AEDPA  also  makes  clear  that  substantial
>      deference is to be accorded a state court's
>      findings of fact.  Section 2254(e)(1) provides
>      that "a determination of a factual issue made
>      by  a  State  court  shall  be  presumed  to  be
>      correct.  The applicant shall have the burden
>      of rebutting the presumption of correctness by
>      clear and convincing evidence."  28 U.S.C. §
>      2254(e)(1).

Henderson  v.  Campbell, 353 F.3d 880, 889-891 (11th Cir. 2003)

(footnote omitted), cert. denied, 543 U.S. 811 (2004).

      Clearly,  the  new  28  U.S.C.  §  2254(d)  creates  a  more

deferential  standard  for  federal  court  review  of  state  court

adjudications:    "[u]nless  a  state  court  decision  is  directly

contrary to Supreme Court case law, we review state court findings

of fact and conclusions of law for reasonableness." Van Poyck v.

Florida Dep't of Corr., 290 F.3d 1318, 1321 (11th Cir. 2002) (per

curiam), cert. denied, 537 U.S. 812 (2002), 537 U.S. 1105 (2003);

Mitchell v. Esparza, 540 U.S. 978 (2003) (per curiam) (holding that

the Ohio Court of Appeals' decision was not "contrary to" or an

"unreasonable application" of clearly established federal law and

stressing "the limits imposed on federal habeas review by 28 U.S.C.

§ 2254(d)").

The "contrary to" and "unreasonable application" clauses have independent meaning and provide separate bases for federal habeas review:

> "Under the 'contrary to' clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts." Williams, 529 U.S. at 412-13, 120 S.Ct. at 1523 (O'Connor, J., concurring). The "contrary to" clause "suggests that the state court's decision must be substantially different" from the controlling legal precedent. Fugate v. Head, 261 F.3d 1206, 1216 (11th Cir. 2001), cert. denied, --- U.S. ---, 122 S.Ct. 2310, 152 L.Ed.2d 1065 (2002) (quoting Williams, 529 U.S. at 405, 120 S.Ct. at 1519). A state court's decision that applies the correct legal rule would not fit within the "contrary to" clause even if the federal court might have reached a different result relying on the same law. See Williams, 529 U.S. at 404-06, 120 S.Ct. at 1519-20 (O'Connor, J., concurring).
>
> . . . .
>
> "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Williams, 529 U.S. at 414, 120 S.Ct. at 1523 (O'Connor, J., concurring). In deciding this issue, the federal court should consider whether the state court's application of the law was objectively unreasonable and should not apply the subjective "all reasonable jurists" standard. Id. at 409-10, 120 S.Ct. at 1521-22. The Supreme Court recently adhered to its pronouncements in Williams, stating that "we stressed in

> Williams that an unreasonable application is
> different from an incorrect one."  Bell v.
> Cone, 535 U.S. 685, 122 S.Ct. 1843, 1850, 152
> L.Ed.2d 914 (2002).  The Court further noted
> that "a federal habeas court may not issue a
> writ under the unreasonable application clause
> 'simply because that court concludes in its
> independent judgment that the relevant state-
> court decision applied clearly established
> federal law erroneously or incorrectly.'" Id.
> (quoting Williams, 529 U.S. at 411, 120 S.Ct.
> at 1522 (O'Connor, J., concurring)).

Wellington v. Moore, 314 F.3d 1256, 1260-61 (11th Cir. 2002).

The Eleventh Circuit has addressed the application of the "contrary to" clause in reviewing a state court adjudication:

> In applying the "contrary to" prong of
> AEDPA, we have recognized that where no
> Supreme Court precedent is on point, "we
> cannot say that the state court's conclusion
> . . . is contrary to clearly established
> Federal law as determined by the U.S. Supreme
> Court." McIntyre v. Williams, 216 F.3d 1254,
> 1258 (11th Cir. 2000).

Washington v. Crosby, 324 F.3d 1263, 1265 (11th Cir.), cert. denied, 540 U.S. 965 (2003).

Under 28 U.S.C. § 2254(d)(2), this Court must determine whether the state court's adjudication resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  Furthermore, AEDPA "also directs that a presumption of correctness be afforded factual findings of state courts, which may be rebutted only by clear and convincing evidence.  See id. at § 2254(e)(1).  This presumption of correctness applies equally to factual

10

determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). Thus, to the extent that Petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under the new § 2254(d).

### V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 125 S.Ct. 2456, 2462 (2005) (citations omitted). If counsel's performance falls "below the line of reasonable practice, there is a further

question about prejudice, that is, whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" Id. at 2467 (citation omitted).

The Eleventh Circuit has captured the essence of an ineffectiveness claim:

> [A] petitioner must show that his lawyer's performance fell below an "objective standard of reasonableness" and that the lawyer's deficient performance prejudiced the petitioner. See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). Establishing these two elements is not easy: "the cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." Waters v. Thomas, 46 F.3d 1506, 1511 (11th Cir. 1995) (en banc) (quoting Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994)).
>
> For assessing a lawyer's performance, Chandler v. United States, 218 F.3d 1305 (11th Cir. 2000) (en banc) cert. denied, 531 U.S. 1204, 121 S.Ct. 1217, 149 L.Ed.2d 129 (2001), sets out the basic law: "Courts must indulge the strong presumption that counsel's performance was reasonable and that counsel made all significant decisions in the exercise of reasonable professional judgment." Id. at 1314 (internal marks omitted). . . . Our role in reviewing an ineffective assistance claim is not to "grade" a lawyer's performance; instead, we determine only whether a lawyer's performance was within "the wide range of professionally competent assistance." See Strickland, 104 S.Ct. at 2066.
>
> The inquiry into whether a lawyer has provided effective assistance is an objective one: a petitioner must establish that no objectively competent lawyer would have taken

12

the action that his lawyer did take."  <u>See</u>
<u>Chandler</u>, 218 F.3d at 1315. . . .

A petitioner's burden of establishing
that his lawyer's deficient performance
prejudiced his case is also high. "It is not
enough for the [petitioner] to show that the
errors had some conceivable effect on the
outcome of the proceeding. Virtually every
act or omission of counsel would meet that
test." <u>Strickland</u>, 104 S.Ct. at 2067.
Instead, a petitioner must establish that a
reasonable probability exists that the outcome
of the case would have been different if his
lawyer had given adequate assistance. <u>See</u> <u>id</u>.
at 2068.[²]

<u>Van Poyck</u>, 290 F.3d at 1322-23 (footnotes omitted).

In sum, "[w]ithout proof of both deficient performance and
prejudice to the defense, . . . it could not be said that the
sentence or conviction 'resulted from a breakdown in the adversary
process that rendered the result of the proceeding unreliable,' and
the sentence or conviction should stand." <u>Bell v. Cone</u>, 535 U.S.
685, 695 (2002) (internal citation omitted) (quoting <u>Strickland v.</u>
<u>Washington</u>, 466 U.S. 668, 687 (1984)).

---

² However, "when a defendant raises the unusual claim that
trial counsel, while efficacious in raising an issue, nonetheless
failed to preserve it for appeal, the appropriate prejudice inquiry
asks whether there is a reasonable likelihood of a more favorable
outcome on appeal had the claim been preserved." <u>Davis v. Sec'y</u>
<u>for the Dep't of Corr.</u>, 341 F.3d 1310, 1316 (11th Cir. 2003) (per
curiam) (citation omitted).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

As ground one, Petitioner contends that defense counsel was ineffective for failure to produce, investigate, depose and cross-examine potential exculpatory witness Nam Chan Huynh. Petitioner alleges that Mr. Huynh would have testified that it was a common practice for Vietnamese people entering the United States to take off two or three years from their ages to avoid detection and be able to exit their country. Petition at 44. Thus, Petitioner claims that his trial attorney was ineffective for his failure to produce Mr. Huynh to cast doubt upon the victim's age.[3]

Respondents acknowledge that Petitioner raised this claim in his Rule 3.850 motion. Response at 6. After conducting an evidentiary hearing, the trial court adjudicated this claim on the merits. In denying this claim, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law, stating in pertinent part:

---

[3] The central issue in Petitioner Delgado's case was whether or not the victim was under the age of eighteen years old at the time of the sexual encounters. EH Tr. at 12. Petitioner's defense at the trial was that these acts were consensual sexual activity between two adults. Id.; Ex. B, Transcript of the Jury Trial (hereinafter Tr.) at 313, 320, 321, 324. Petitioner testified that the victim told him that she was eighteen years old in 1999. Tr. at 313.

14

On March 11, 2004, this Court held an evidentiary hearing on Defendant's claims, at which both defendant and his former attorney[4] testified and at which Defendant was represented by appointed private counsel. Defendant contends that counsel erred in (a) failing to call two defense witnesses at trial and (b) failing to call the analyst who performed a DNA extraction in the instant case.

As to Defendant's first claim, Defendant asserted in his Motion that counsel "failed to investigate and interview exculpatory witness Nam Chan Huynh" (Defendant's Motion, page 5). According to Defendant's Motion, the witness was "available and willing to testify on his behalf at trial." Defendant himself testified, however, that contrary to his sworn Motion, the witness was in fact *not* available (Transcript, page 50). Further, counsel testified that the witness in question (a) was a fellow jail inmate of Defendant's at some point[,] (b) was in fact investigated and interviewed by both counsel and his investigator, (c) was not cooperative, having initially refused to even provide his name, and (d) would at most have been able to provide a generalized hearsay statement that he had heard that Vietnamese people in general sometimes misrepresented their true age. The witness had no specific knowledge of any of the actual persons in the case having engaged in such a practice. (Transcript, pages 9-12, 24-25).

---

[4] "When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger." Chandler v. United States, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc), cert. denied, 531 U.S. 1204 (2001). Mr. Gonzalo Andux (Petitioner's trial counsel) had nineteen (19) years of experience as an Assistant Public Defender and had handled similar sexual battery cases for approximately twelve (12) years. EH Tr. at 8-9; see Williams v. Head, 185 F.3d 1223, 1229 (11th Cir. 1999) (noting that "[i]t matters to our analysis" whether the attorney is an experienced criminal defense attorney), cert. denied, 530 U.S. 1246 (2000).

Further, counsel testified that the decision not to call this witness was a tactical one because evidence of this nature might not have been admissible in the first instance and would also have been already provided by way of Defendant's own testimony and other documents introduced at trial (Transcript, pages 9-13). Clearly, such testimony (even if admitted) would, at most[,] have been merely cumulative, and counsel cannot be deemed ineffective for failing to present it. Downs v. State, 740 So.2d 506 (Fla. 1999); Card v. State, 497 So.2d 1169 (Fla. 1986); Coleman v. State, 718 So.2d 827 (Fla. 4th DCA 1998). Further, counsel testified that the decision not to call the witness was discussed with Defendant, and Defendant agreed with the strategy. (Transcript, page 10).

Ex. J at 2-3.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. The Court must next consider the "contrary to" and "unreasonable application" components of the statute. "It is the objective reasonableness, not the correctness per se, of the state court decision that we are to decide." Brown v. Head, 272 F.3d 1308, 1313 (11th Cir. 2001), cert. denied, 537 U.S. 978 (2002).

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence.  The presumption that Mr. Gonzalo Andux's performance was reasonable is even stronger since the record reflects that he is an experienced criminal defense attorney.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose.  United States v. Freixas, 332 F.3d 1314, 1319-20 (11th Cir. 2003) (citations omitted).

As recognized by the trial court in denying the Rule 3.850 motion, Mr. Gonzalo Andux testified at the evidentiary hearing, noting that Nam Chan Huynh was "at some point" in jail with Petitioner.  EH Tr. at 9-10, 11.   Mr. Andux stated that he and his paralegal interviewed Mr. Huynh and that Mr. Huynh was listed as a witness, but they decided not to call him.  Id. at 10.  Mr. Andux concluded that it was a tactical decision not to call him as a witness and that decision was discussed with Petitioner.  Id.  Mr.

17

Andux explained that "at the end of his case we had agreed on what evidence to put on." Id.

Mr. Andux set forth the circumstances surrounding their decision not to call him as a witness. Id. at 11. Mr. Huynh originally did not want to be listed as a witness and was "uncooperative." Id. at 11, 24. "[T]he reason that he was not called was that he could not say that in this particular case these people lied about their age." Id. Mr. Andux concluded:

> What he was willing to say was that generally he had heard that some Vietnamese people shave years of[f] their age, but he could not give me -- he would not name even one specific person that would do that.
>
> . . . .
>
> [Petitioner Delgado] was on videotape. There were numerous acts on videotape, so that was -- the argument was that this was a consensual sexual activity with an adult.
>
> . . . .
>
> Well, the Judge might have let it in, I don't know. I don't think the value of it was -- the thing was that Mr. Delgado was in a position to testify specifically about what had happened in this family, and I thought that that was the best way to go.

Id. at 11-12. Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice. Petitioner has not shown that a reasonable probability exists that the outcome of the

18

case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Id. at 24-25.  Thus, this ineffectiveness claim is without merit. See Response at 9-12.

## B. Ground Two

As ground two, Petitioner contends that defense counsel was ineffective for failure to produce available witness Phuoc Vo for trial and for failure to produce the original documents that stated the real age of the alleged victim.  Respondents acknowledge that Petitioner raised this claim in his Rule 3.850 motion.  Response at 6.  After conducting an evidentiary hearing, the trial court adjudicated this claim on the merits.  After identifying the two-prong Strickland ineffectiveness test as the controlling law, the trial court denied the claim, stating in pertinent part:

> As to Defendant's second claim, he asserts (Defendant's Motion, page 8) that his attorney should have called one of the State's listed witnesses, Phuoc Thi Vo[5], to testify at trial.  According to Defendant, counsel should have called this witness for the sole purpose of impeaching her deposition testimony and attempting to demonstrate that she herself had committed fraud with respect to immigration documents in order to receive government benefits.  (Defendant's Motion, page 10).

---

[5] The victim testified that her aunt (Phuoc Thi Vo) adopted her and her brother.  Ex. B, Transcript of the Jury Trial at 120. Further, the victim referred to her aunt as her adoptive mother.  Id. at 122.  Petitioner Delgado lived with the victim, her adoptive mother and brother, and the victim expressed that Petitioner was "like a father" to her.  Id. at 123.

As counsel testified, this was yet another decision in which he concluded, as a tactical matter, that it would be in Defendant's best interest not to call the witness, and that Defendant concurred in the decision (Transcript, page 14), for a number of reasons. The witness in question, an aunt of the Victim, *might* have been impeachable on several collateral issues; however, as counsel pointed out, not only would the defense not have been able to present her as on cross-examination, but she would *also* have corroborated the testimony of the Victim regarding [the] Victim's age. The age of the victim was *the* central issue at trial, since Defendant had videotaped himself having sexual relations with her on numerous occasions. (Transcript, pages 14-18, 26-33). Since without this witness, the Victim's testimony regarding her age was uncorroborated, and was called into question by documents introduced at trial, the potential damage this witness could have done to the defense far outweighed any possible benefit to Defendant by way of collateral impeachment. Clearly[,] this was not an unreasonable decision.

Ex. J at 3-4.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim

were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence. Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d at 1319-20. As recognized by the trial court in denying the Rule 3.850 motion, Mr. Andux testified at the evidentiary hearing and explained his trial strategy in not calling Phuoc Thi Vo.

> I deposed her. I did cross her during the motion to suppress. I listed her as a witness. She was available to testify.
>
> [T]he decision at the time was discussed with Mr. Delgado as to whether or not to call her, and it was a -- it was my advice then and it would still be now I think that it would not have been to his benefit to call her, to his overall benefit. We could have gotten some things out, but I think a lot of bad things would have come out.
>
> . . . .
>
> That she was a family member living in Vietnam that could actually testify as to the child's age. And one of our biggest arguments in this case was that you have this child saying what her age is with a reason to lie, and you have nobody else to document that

21

> other than these documents that we have proven
> are not reliable.
>
>         . . . .
>
> [T]he other thing was that . . . the State
> would have been able to cross her on whatever,
> and there were some things, some other things
> that they could have brought out through her
> regarding a specific incident where she
> alleges to have caught the child with him,
> which was not there.

EH Tr. at 14-16.   Mr. Andux concluded that the defense had extensively attacked the credibility of the victim through cross-examination, and therefore Phuoc Thi Vo's testimony was not necessary since it would have been damaging.   <u>Id</u>. at 17, 33.   Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.   Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, this ineffectiveness claim is without merit.   <u>See</u> Response at 12-14.

### C. Ground Three

As ground three, Petitioner contends that defense counsel was ineffective for failure to call the State's DNA expert who would have created a reasonable doubt as to Petitioner's guilt. Respondents acknowledge that Petitioner raised this claim in his

Rule 3.850 motion. Response at 6. After conducting an evidentiary
hearing, the trial court adjudicated this claim on the merits.
After identifying the two-prong Strickland ineffectiveness test as
the controlling law, the trial court denied the claim, stating in
pertinent part:

> Defendant alleges, in his third claim,
> that counsel was ineffective for failing to
> call the analyst who performed a DNA test on
> materials taken from [the] Victim. The
> analyst reports, appended to Defendant's
> Motion as Exhibits "H" and "J," indicate that
> a mixture of DNA from [the] Victim's underwear
> contained profiles which Defendant was a
> possible contributor to. In claim (3) of his
> Motion, Defendant asserts that a DNA analyst
> would have "testified that another individual
> by the name of "Douglas" was also tested
> according to the results" portion attached to
> Defendant's Motion (Defendant's Motion, page
> 14). According to Defendant, this "fact"
> would somehow have been admissible as evidence
> that the Victim was having sexual intercourse
> with someone other than Defendant, which would
> supposedly impeach her deposition testimony.

> As clearly indicated at Appendix "I" and
> "J" of his Motion, the only persons "tested"
> under Defendant's case number were Defendant
> and [the] Victim. The notation "Douglas" is
> ascribed to a wholly separate case and
> submission number which simply happened to be
> processed in the same gel (at tube 140) as
> Defendant's case number (tubes 119-123).
> Further, the report of the analyst itself
> (Defendant's Motion, "Appendix J") contains
> absolutely no reference to "Douglas," nor does
> it indicate that there is a mixture containing
> alleles other than those traceable to either
> [the] Defendant or [the] Victim.

> Further, evidence of [the] Victim's
> actions with any other persons would likely
> have been inadmissible.

23

> "Specific instances of prior
> consensual sexual activity and any
> person other than the offender shall
> not be admitted into evidence in a
> prosecution under s. 794.011 . . .
> [unless] it is first established to
> the court in a proceeding in camera
> that the defendant was not the
> source of the semen, pregnancy,
> injury, or disease; or, when consent
> by the victim is at issue, such
> evidence may be admitted if it is
> first established to the court in a
> proceeding in camera that such
> evidence tends to establish a
> pattern of conduct or behavior on
> the part of the victim which is so
> similar to the conduct or behavior
> in the case that it is relevant to
> the issue of consent."

> § 794.022(2), Florida Statutes; <u>Gilliam v.
> State</u>, 817 So.2d 768, 775 (Fla. 2002).
> Moreover, since Defendant videotaped himself
> repeatedly having sex with the victim, neither
> consent nor identity was in issue.

> In any event, as counsel testified, this
> was yet another tactical decision discussed
> with Defendant and with which Defendant
> concurred. (Transcript, pages 20-21). The
> Court specifically finds that, where the
> testimony is in conflict, counsel's testimony
> was both more credible and more persuasive
> than Defendant's allegations. <u>Laramore v.
> State</u>, 699 So.2d 846 (Fla. 4th DCA 1997).

Ex. J at 4-6.

As noted previously, upon Petitioner's appeal, the appellate
court per curiam affirmed the trial court's order. Accordingly,
the claim was rejected on the merits by the state trial and
appellate courts. Thus, there are qualifying state court
decisions. This ground should be addressed applying the

deferential standard for federal court review of state court adjudications, as required by AEDPA.

Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

In evaluating the performance prong of the <u>Strickland</u> ineffectiveness inquiry, there is a strong presumption in favor of competence.  Thus, Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d at 1319-20.  As recognized by the trial court in denying the Rule 3.850 motion, Mr. Andux testified at the evidentiary hearing that he and Petitioner discussed the DNA analyst.

> The only reason to put the DNA in would have been to . . . suggest that this girl was having sex with somebody other than Mr. Delgado.  That would have been the sole purpose of doing that.  But, yes, we talked about it.
>
>         . . . .
>
> We decided to put the bulk of the testimony on through cross-examination and

> through [Petitioner's] testimony, because that
> gave us the greatest chance.

EH Tr. at 20-21.  The record reflects that defense counsel extensively cross-examined the victim to attack her credibility. Further, Petitioner testified that the victim told him she was eighteen years old and that the sexual encounters were between two consenting adults.  Tr. at 313, 320, 321, 324.  Given defense counsel's actions based on the record before this Court, defense counsel's performance was not deficient.

Even assuming *arguendo* deficient performance by defense counsel, Petitioner has not shown prejudice.  The victim's age was the sole issue in this case.  Thus, even if the victim had sexual relations with another individual and that testimony would have been admitted, it is unlikely that the jury would have found her less credible since Petitioner had videotaped their sexual activities and the jury viewed the videotape.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the assistance that Petitioner has alleged he should have provided. Thus, this ineffectiveness claim is without merit.  <u>See</u> Response at 14-16.

### D. Ground Four

As ground four, Petitioner claims he was denied a fair trial and due process of law as a result of the cumulative errors and omissions by counsel.   For the reasons stated with respect to grounds one, two and three, this Court concludes that Petitioner received a fair trial and was not denied due process of law.   The jury observed the videotape of Petitioner's sexual encounters with the victim.   At the time of the sexual activities, Petitioner Delgado was fifty-two years old, and the victim was under the age of eighteen.   Tr. at 120, 324.   Petitioner was in a position of familial or custodial authority with respect to the victim.   The jury saw the victim on the stand, heard her describe the sexual encounters and judged her credibility as to her age and testimony. There was documentary evidence that corroborated her testimony. Based on the evidence, the jury could find beyond a reasonable doubt that Petitioner committed the crimes of sexual battery by a person in a position of familial or custodial authority on a person older than twelve, but less than eighteen years of age and promoting a sexual performance by a child, for which he was convicted.   Petitioner's fourth claim is without merit.   See Response at 14-16.

## VII. Conclusion

Any other claims not specifically addressed are found to be without merit. Accordingly, for all of the above-stated reasons, the Petition will be denied and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition (Doc. #1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2. The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3. The Clerk of the Court shall close this case.

**DONE AND ORDERED** in chambers in Jacksonville, Florida, this 20th day of November, 2006.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

sc 11/17
c:
Juan Delgado
Ass't Attorney General (Wilcox)

28